IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MASTER GREENE,  :  | | |
|     Petitioner,  : | | CIVIL ACTION |
| : | | |
|         v.  : | | |
| : | | |
| KEVIN KAUFFMAN, *et al.*,  : | | No.  20-CV-5915 |
|     Respondents.  : | | |

MEMORANDUM

KENNEY, J.                                                                                                       DECEMBER 21, 2022

I.  INTRODUCTION

Master Greene petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner alleges two instances of ineffective assistance of trial counsel. The Honorable Magistrate Judge Pamela A. Carlos recommends that the Court deny the petition. Ultimately, the Court adopts Judge Carlos' reasoned Report and Recommendation. The Court also denies a certificate of appealability.

II.  BACKGROUND AND PROCEDURAL HISTORY

The factual and procedural background of this case is outlined in the Report and Recommendation in detail and is reiterated here. ECF No. 16. On October 18, 2013, following a jury trial and less than two hours of deliberation, Petitioner was convicted of: (i) rape of a child under 13 years of age; (ii) indecent assault of a person less than 13 years of age; (iii) corruption of a minor by a defendant over 18 years of age for the purpose of committing a sexual offense; (iv) unlawful contact with a minor relating to sexual offenses; and (v) endangering the welfare of a child. ECF No. 7-28. The charges against Petitioner stemmed from allegations that he was

engaged in sexual contact with his then-girlfriend's four-year-old daughter, M.R., between April 1, 2011 and July 31, 2011. ECF No. 7-75 at 1–2. When confronted by M.R.'s mother, Petitioner fled Pennsylvania and was arrested in Colorado on March 8, 2012. *Id.* at 2. On June 19, 2012, Petitioner was extradited back to Pennsylvania. *Id.*

When interviewed by a forensic interviewer, M.R. disclosed that "Uncle," which was the name she used to refer to Petitioner had: (i) touched her "cookie;"[1] (ii) "pulled her pants down and was touching her cookie with his hand when she was sleeping in her room;" (iii) "touched her cookie with his cookie inside her cookie;" and (iv) put his cookie "in deep and he peed in her cookie" on more than one occasion.  *Id.* (citing the state court record). These statements were captured in a recording and M.R. made similar disclosures to other individuals, including her mother and cousin. M.R.'s statements were admitted under the Tender Years Hearsay Exception.[2] ECF No. 7-75. The Honorable Judge Ashworth, who presided over the trial and Post Conviction Relief Act ("PCRA") proceedings, found M.R. competent to testify and that she understood the difference between a truth and a lie and permitted her testimony by Contemporaneous Closed-Circuit Television ("CCTV"). ECF No. 7-91.

The case proceeded to trial where Petitioner was represented by Attorney Cory J. Miller. ECF No. 7-28. At trial, M.R. testified that "only Uncle" touched her "cookie" and when shown a photograph of Petitioner she identified him as "Uncle." ECF No. 7-91 at 226. M.R.'s cousin also testified that M.R. referred to petitioner as uncle and, further, that he witnessed a suspicious interaction between M.R. and Petitioner in which M.R. was "squeezing her stomach down in her

---

[1] It was established at trial that M.R. used the word "cookie" to refer to her vagina. ECF No. 7-91 at 215-16, 222.
[2] 42 Pa.C.S.A. § 5985.1.

. . . nether region," and asking Petitioner "[w]hy does it hurt, Uncle, why does it hurt?" *Id.* at 293.

Additionally, the Commonwealth called as an expert witness Certified Registered Nurse Practitioner Julie Stover. Nurse Stover worked at the Lancaster County Children's Alliance and specialized in performing medical examinations on child victims of sexual abuse. *Id.* at 360–63. Nurse Stover performed such an exam on M.R. in July 2011 and testified that the examination was "normal" in that there was "no sign of any injury unrelated to sexual abuse, there was [sic] no signs of injuries acute or chronic or healing that could have been a result of the sexual abuse." *Id.* at 367. Nevertheless, she testified that the findings were consistent with M.R.'s allegations because by the time she sees children who have experienced sexual abuse any physical injuries have generally healed, and it is "very rare" to see such injuries. *Id.* at 367–69 (noting that the "slimy mucosal membrane" that lines the vagina, which is similar to the inside of the mouth, "heals quicker and better than skin"). In support of this testimony, Nurse Stover cited an article entitled *Normal Doesn't Mean Nothing*, in which doctors examined thirty-six pregnant teenagers and only two presented signs of vaginal penetration. *Id.* Petitioner's counsel attempted to undermine Nurse Stover's testimony by pointing to the dearth of physical evidence discovered and the fact that, despite her understanding that physical injuries are rarely apparent after seventy-two hours, she nevertheless performed the examination of M.R. the week following M.R.'s forensic interview. *Id.* at 376–89.[3] Petitioner's counsel did not present an expert witness to rebut Nurse Stover's testimony.

---

[3] Petitioner's counsel also highlighted the fact that M.R.'s hymen showed no sings of injury and that her four-millimeter genital opening suggested that penetration would be impossible. ECF No. 7-91 at 376–89.

Following Petitioner's conviction, Judge Ashworth sentenced him to an aggregate of fifteen to thirty years' incarceration on January 31, 2014. ECF No. 7-31. Petitioner filed a direct appeal to the Superior Court of Pennsylvania on March 24, 2014 and the Superior Court affirmed the judgment of sentence on April 24, 2015. ECF Nos. 7-39, 7-45, 7-47. Petitioner did not seek further review. ECF No. 7-75 at 4.

On April 22, 2016, Petitioner filed through counsel a timely PCRA petition raising six ineffective assistance of counsel claims. *Id.* at 5. Included in the petition were the claims that trial counsel "erred in having the victim identify [him] through a photograph at trial," and further erred by failing to "consult with an expert, retain an expert, and present the testimony of an expert" to "rebut the testimony of the Commonwealth's [expert witness]." *Id.* The Commonwealth responded to the PCRA petition and conceded the need for an evidentiary hearing on the issue of trial counsel's failure to call a rebuttal expert witness. *Id.* at 6. On October 25, 2016, Judge Ashworth issued a notice of intent to dismiss the other five claims without further proceeding because they lacked a genuine issue of material fact. ECF No. 7-81. On March 28, 2017, after receiving no response from Petitioner, Judge Ashworth dismissed the five claims accordingly. *Id.* at 5.

An evidentiary hearing was held on the remaining PCRA claim on June 26, 2017. At the hearing, trial counsel explained that his decision to show M.R. a photograph of petitioner was taking "a chance" and that it "didn't work out." ECF No. 7-94 at 22–23. He further explained his decision not to call a rebuttal expert witness. He provided that he wanted to attack the expert testimony through a "layperson attack" by "trying to impress on the jury that [the penetration] was unrealistic." *Id.* at 8–9. Trial counsel explained that he was "trying to discredit the expert without calling another one" and that his strategy was focused on M.R.'s credibility because she

4

was uncertain of who assaulted her, when she was assaulted, and possibly, who Petitioner was. *Id.* Petitioner's counsel in the PCRA claim, attorney Jonathan Crisp, produced an expert witness, Suzanne Rotolo, Ph.D., to rebut Nurse Stover's trial testimony and demonstrate trial counsel's alleged ineffective assistance. *Id.* at 28–72. Mr. Crisp attacked Nurse Stover's citation to *Normal Doesn't Mean Nothing*, arguing that she incorrectly stated ninety-five percent of sexual abuse examinations are "normal." *Id.* at 82–89. However, Dr. Rotolo did agree with Nurse Stover's ultimate conclusion that a child's allegation of sexual abuse may be consistent with a "normal" medical examination. *Id.* at 69–70.

Judge Ashworth denied PCRA relief on Petitioner's remaining claim on December 18, 2017. ECF No. 7-67. Petitioner appealed Judge Ashworth's denial of the expert witness and photograph identification claims to the Superior Court of Pennsylvania on January 5, 2018. ECF No. 7-68. On appeal, Petitioner asked the Superior Court whether trial counsel provided ineffective assistance by failing to present a rebuttal expert witness and by aiding M.R. in identifying him at trial. ECF No. 7-71. On December 20, 2018, the Superior Court affirmed Judge Ashworth's denial of PCRA relief because neither alleged deficiency was prejudicial. ECF No. 7-81 at 15. Petitioner did not seek further review in the Supreme Court of Pennsylvania.[4]

Following a decision of Pennsylvania law which declared the imposition of mandatory minimum sentences for convictions of involuntary deviate sexual intercourse unconstitutional, *Commonwealth v. Wolfe*, 140 A.3d 651 (Pa. 2016), Judge Ashworth resentenced Petitioner to the

---

[4] Petitioner need not seek review from the Supreme Court of Pennsylvania and has exhausted his state remedies for habeas purposes. *See In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Judicial Admin. Docket No. 1 (Pa. May 9, 2000) ("[I]n all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error."); *see also Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) ("Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c).")

same fifteen to thirty years' incarceration but did not impose a mandatory minimum. ECF No. 7-84. Petitioner appealed his amended sentence to the Superior Court of Pennsylvania on October 16, 2019 and subsequently discontinued his appeal on November 26, 2019 because he had previously raised identical issues. ECF No. 7-89.

On November 24, 2020, Petitioner, through counsel, timely petitioned for habeas corpus relief. ECF No. 1. Petitioner raises two grounds for relief: (i) "Petitioner was deprived of his Constitutional right to effective assistance of counsel by trial counsel's initiation of unduly suggestive identification procedure of Appellant during trial"; and (ii) "Petitioner was deprived of his Constitutional right to effective counsel by trial counsel's failure to call a defense expert witness nor prepare for government's expert witness." *Id.* The District Attorney of Lancaster County responded on March 5, 2021 and contended that both grounds were meritless. ECF No. 8. Petitioner replied on July 6, 2021. ECF No. 13.

Magistrate Judge Carlos issued a Report and Recommendation on June 15, 2022. ECF No. 16. In the Report and Recommendation, Judge Carlos found that Petitioner's claims were meritless and recommended denial of the petition and denial of the certificate of appealability. *Id.* Petitioner timely objects to Judge Carlos' Report and Recommendation. ECF No. 19. The Court makes a *de novo* determination of the portions of the Report and Recommendation to which the objection is made. *Equal Emp't Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (citing 28 U.S.C. § 636(b)(1)).

### III. STANDARD OF REVIEW

The federal courts' power to grant habeas relief is limited. A court cannot grant habeas relief unless the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). State court determinations are presumed to be correct and are given great deference. *Rice v. Collins*, 546 U.S. 333, 344 (2006) (citing 28 U.S.C. § 2254(d)(2)). To prevail in demonstrating a state court result was contrary to clearly established federal law, Petitioner must demonstrate that the state court's application of federal law was "objectively unreasonable" as opposed to "merely incorrect." *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 252 (3d Cir. 2020). Indeed, Supreme Court precedent must require a contrary outcome. *See id.*

For habeas petitions that claim ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner must show that counsel's representation "fell below an objective standard of reasonableness" and that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In establishing the first prong, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In other words, counsel's errors were "so serious as to deprive the defendant of a fair trial." *Id.* Courts "evaluate the conduct from counsel's perspective at the time," rather than with the benefit of hindsight, and "apply a strong

presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

Second, the petitioner must show prejudice resulting from counsel's deficient performance, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United Sates v. Scripps*, 961 F.3d 626, 632 (3d Cir. 2020). Indeed, the petitioner must show that counsel's error actually had an adverse impact on the defense. *See Strickland*, 488 U.S. at 693. An error at trial is harmless if it did not substantially and injuriously impact the jury's verdict. *Bond v. Beard*, 539 F.3d 256, 276 (3d Cir. 2008). The Court considers the totality of the evidence before the jury in determining prejudice and determines whether, in the absence of the errors, it is reasonably likely that the decision would have been different. *Strickland*, 488 U.S. at 696.

## IV. DISCUSSION

If an ineffectiveness claim is more easily disposed of on the ground of lack of sufficient prejudice, the Court is instructed to take this approach and need not address the deficient performance prong. *Id.* at 697. Ultimately, the Court adopts the Report and Recommendation in its entirety, finds that Petitioner was not prejudiced by any alleged deficiencies of counsel, and dismisses the Petition and the Objections.

### a. Petitioner was not prejudiced by trial counsel's identification procedure

Petitioner seeks habeas relief because of counsel's "initiation of unduly suggestive identification procedure of [him] during trial." ECF No. 1 at 8. The identification procedure at issue is counsel's decision at trial to show M.R. a photograph of Petitioner with the hope that M.R. would fail to identify Petitioner as "Uncle." ECF No. 13 at 13.

Petitioner asserts that the jury could not have determined beyond a reasonable doubt that he was M.R.'s perpetrator *but for* trial counsel's decision to show his photograph to M.R. *Id.* at 33. According to Petitioner, trial counsel engaged in a "highly prejudicial line of questioning that continued once [M.R.'s] answers became prejudicial after eliciting the only direct identification of [Petitioner] as the perpetrator." *Id.* at 32. This line of questioning and M.R.'s identification of Petitioner "ensured the jury heard [that Petitioner] did bad things to M.R." *Id.* According to Petitioner, trial counsel's deficiencies prejudiced his defense because they resulted in "the only positive identification of [Petitioner] as the perpetrator during his jury trial" and because it "directly led to some of the most prejudicial testimony during the entire trial, and foreclosed a very effective closing argument," thereby "allowing the Commonwealth to argue that fact in their closing." *Id.* at 28–33.

Additionally, in his Objections, Petitioner asserts that M.R.'s ability to identify Petitioner was unclear immediately before taking the stand. Petitioner points out that M.R. referred to the perpetrator as "Uncle Buddy," a name which M.R.'s mother was not aware that M.R. used to refer to Petitioner. ECF No. 19 at 2. Petitioner also points out that M.R. may have referred to other men as "Uncle" in addition to Petitioner. *Id.* However, Petitioner also admits that it is "accurate that a number of other witnesses indicated that M.R. referred to Petitioner as Uncle." *Id.* at 3.[5] First, M.R.'s mother testified that M.R. almost exclusively referred to Petitioner as

---

[5] In his Objections, Petitioner attempts to shoehorn an additional failure on counsel's part into his petition: that "the testimony fail[ed] to indicate or explain the fact that she called others in her life 'Uncle' and that there were clearly different men in her life about whom she could have referenced," and that the testimony "fail[ed] to reconcile [M.R.'s] reference to Petitioner as 'Uncle Buddy.'" ECF No. 19 at 3. Trial counsel's purported failure to develop such a record diverges from the question presented in the instant habeas petition: whether by "simply showing Petitioner's photograph to the victim and [asking] whether the individual in the picture was the one" who hurt her was an "unduly suggestive identification of Petitioner" that "deprived [him] of his constitutional right to effective assistance of counsel." ECF No. 13 at 16. In any event, the record reflects that Petitioner was known by some as "Buddy" and by M.R. as "Uncle." ECF No.

"Uncle." ECF No. 7-91 at 240–41. Indeed, M.R.'s mother testified that over the course of several conversations about the assault, M.R. never identified anyone other than "Uncle" as the perpetrator and that M.R. was afraid to be in the same room as Petitioner. *Id.* at 267–68. Additional testimony, while not directly identifying Petitioner as the perpetrator, implied that Petitioner had the opportunity to assault M.R. and had been prone to troubling sexual conduct related to M.R.. *See id.* at 263 (Petitioner was home with M.R. for several hours while M.R.'s mother was at work) and 261–62 (Petitioner attempted to initiate sex with M.R.'s mother while M.R. was sleeping in the same bed).

Even more compellingly, M.R.'s adult cousin, A.M., testified as to a suspicious interaction he witnessed between M.R. and Petitioner. *Id.* at 291–94. According to A.M., on an unspecified date Petitioner invited A.M. over to play video games and said that the door would be unlocked when A.M. arrived. *Id.* at 291. However, when A.M. arrived, the door was locked. *Id.* A.M. persistently knocked on the door, rang the doorbell, and called the house phone. *Id.* at 291–92. Despite A.M.'s efforts, Petitioner did not unlock the door for some time (long enough for A.M. to smoke a cigarette). *Id.* When Petitioner did answer the door, M.R. began to tell A.M. a story about taking a nap with Petitioner and Petitioner immediately cut her off. *Id.* at 292. Immediately following this interaction, M.R. began complaining about pain in her lower abdomen and upper leg region and repeatedly asked Petitioner "why does it hurt?" *Id.* at 292–94.

Upon review of the record, there was sufficient trial evidence to establish Petitioner as M.R.'s abuser even in the absence of M.R.'s identification of him. Petitioner cannot demonstrate prejudice because he has failed to show that there is a "reasonable probability that, *but for* counsel's [purportedly] unprofessional errors, the result of the proceeding would have been

---

7-91 at 294. Trial counsel's failure to attack M.R.'s conflation of his two names was not prejudicial.

10

different." *Strickland*, 466 U.S. at 694. Indeed, the decisions of the Pennsylvania state courts[6] comport with clearly established Supreme Court precedent and do not involve an objectively unreasonable application of the law.

### b. Petitioner was not prejudiced by trial counsel's failure to call a defense expert witness or trial counsel's approach to cross examining Nurse Stover

Petitioner also seeks habeas relief for a deprivation of "his Constitutional right to effective counsel by [trial counsel's] failure to call a defense expert witness nor prepare for government's expert witness." ECF No. 1 at 10. Petitioner asserts that the decision not to call an expert witness to rebut the testimony of Nurse Stover fell below the objectively reasonable standard and prejudiced his defense. ECF No. 13 at 19.

According to Petitioner, the Commonwealth relied so heavily on Nurse Stover's expert testimony, which included misquoted scientific studies, that there is a reasonable probability that the trial outcome would have been different but for trial counsel's failure to impeach or rebut Nurse Stover. *Id.* at 20–22. He asserts that the "trial came down to a matter of credibility" and that "[N]urse Stover's uncontroverted testimony converted an inconclusive proposition (lack of physical evidence [of sexual assault]) into an evidentiary certainty." *Id.* at 21–22.

The PCRA and Superior Courts each concluded that trial counsel's strategy was not unreasonable and did not prejudice his defense. ECF Nos. 7-67, 7-81. According to the state courts, trial counsel employed a reasonable, legitimate trial strategy in choosing not to call an expert to rebut Nurse Stover that would create a "battle of the experts." ECF No. 7-81 at 11–12. Not only did the state courts find that the "layperson attack" was reasonable (ECF Nos. 7-67, 7-

---

[6] The Superior Court agreed with the PCRA Court that M.R.'s testimony that the perpetrator was "her 'daddy uncle' who 'lives with her' . . . coupled with her mother's in-court identification [that M.R. called Petitioner "Uncle"] were sufficient to establish that [Petitioner] was the perpetrator." ECF No. 7-81 at 14.

81), but that Petitioner's expert, Dr. Rotolo, could not even refute Nurse Stover's ultimate conclusion that penetration may not present physical evidence of abuse. ECT No. 7-81 at 12. Therefore, Nurse Stover's "uncontroverted testimony" remained uncontroverted even after Petitioner proffered his own expert witness.

At the evidentiary hearing before the PCRA court, trial counsel explained that he could not refute Nurse Stover's position that penetration might have occurred even in the absence of physical evidence due to the "wiener in the bun" theory. ECF No. 7-94 at 8–9 (trial counsel made several references to this theory to describe the fact that the "sexual intercourse" element of rape of a child can be satisfied "where the penis is running along the lips of the vagina" without any further penetration). Indeed, trial counsel believed that emphasizing the fact that "penetration, however slight" might have occurred would be to Petitioner's detriment.[7] *Id.* The Court agrees that trial counsel's strategy to appeal to common sense—that abuse would result in a physical injury—rather than proffering an expert who might bolster the testimony of the Commonwealth's expert was reasonable.

Though failure to consult an expert in preparation for cross examination of the government's expert or obtain a rebuttal expert to testify on a defendant's behalf may be prejudicial in some instances, *Miller v. Beard*, 214 F. Supp. 3d 304 (E.D. Pa. 2016), that is not the case presented here. In *Miller*, the government called only one witness, an expert, who

---

[7] As described by the PCRA Court, the Pennsylvania criminal code provides that a person commits the offense of rape of a child when the person engages in sexual intercourse with a complainant who is less than 13 years of age. Pa. C.S.A. § 3121(c). The term "sexual intercourse" is defined to include intercourse per os or per anus, "with some penetration however slight." Pa. C.S.A. § 3101. Thus, "penetration, however slight" with the penis is all that is necessary to establish the element of sexual intercourse. *Commonwealth v. Wall*, 953 A.2d 581, 584 (Pa. Super. 2008); *see also Commonwealth v. Minerd*, 562 Pa. 46, 50 (2000) (physical trauma is not an element of the crime). Thus, the Commonwealth was not required to prove that there was anything more than the *slightest* of penetration which may not have caused any physical injury, and trial counsel was aware of this low bar. ECF No. 7-94 (trial counsel testified that there was "no way" he was going to refute the "wiener in the bun analogy" whereby "the penis running along the lips of the vagina meets the elements of the offense.").

12

formed the "sole basis" of establishing whether the defendant had committed a rape. *Id.* at 336. Because the expert in *Miller* was the only evidence as to the rape, the court found that the "totality of the evidence" was "weakly supported by the record," and "thus the resulting [jury decision] was more likely attributable to counsel's errors" with respect to engaging a defense expert. *Id.* at 340.

Here, however, the totality of the evidence at trial strongly supports Petitioner's conviction. The Commonwealth called several witnesses in addition to their expert: (i) M.R., who testified that "Uncle" touched her cookie and "did bad stuff to [her]" when he lived with her; (ii) M.R.'s mother who testified that M.R. referred to Petitioner as "Uncle," that Petitioner spent countless hours alone with M.R., and that M.R. began requesting that her mother, rather than Petitioner, attend to her bedtime routine; (iii) Officer Michener, who recounted the initial complaint that "Uncle" touched M.R.'s "cookie"; (iv) A.M., who testified about witnessing a suspicious interaction between M.R. and Petitioner, and that M.R. referred to Petitioner as "Uncle"; and (v) a forensic interviewer who recounted the blind interview[8] in which M.R. stated that she referred to the "daddy" who lived with her (Petitioner) as "Uncle." ECF No. 7-91. Indeed, this abundance of testimony sets Petitioner's case apart from *Miller*.

Most importantly, Dr. Rotolo's conceded to Nurse Stover's ultimate conclusion that sexual abuse of a minor may not yield physical injury. ECF No. 7-94. Petitioner objects to Judge Carlos' Report and Recommendation on the basis that "the collateral information [from the referenced studies] Nurse Stover used to bolster her opinion" was prejudicial. ECF No. 19 at 3–4. Petitioner argues that "Nurse Stover failed to say that of the abused participants, 36% were fondled, 31% involved oral genital contact and only 63% involved penile-vaginal contact" and

---

[8] A "blind interview" is one in which the forensic interviewer working with a child is unaware of the allegations made or the reason for the interview. ECF No. 7-91 at 312–13.

13

that she failed to account for the differing ages of each study participant. *Id.* Indeed, Petitioner's proffered expert testified only to take issue with Nurse Stover's recitation of "the studies and statistics." ECF No. 7-94 at 69-70.

However, whether the statistics were accurately recited was not outcome determinative. The crux of Nurse Stover's testimony was that M.R.'s "normal" examination did not rule out that penetration (however slight) may have occurred. When thoroughly questioned by Judge Ashworth at the evidentiary hearing, Dr. Rotolo confirmed that she agreed with Nurse Stover's position that "a child [who was abused] could have a normal examination" and she did not present an opinion as to whether M.R. was sexually abused. *Id.* at 69-70. Dr. Rotolo confirmed that in "most cases," even when the abuse is reported "shortly after the [incident]," an examination will "not yield evidence of anogenital injury." *Id.* at 51–52.

Petitioner's theory assumes that he would not have been convicted if the Commonwealth could not prove physical injury and ignores the "wiener in the bun" theory. The jury understood that even the *slightest* of penetration was a crime. ECF No. 7-92. Thus, the jury was tasked with finding whether there was "entrance [of Petitioner's penis or tongue] into the labia or the lips of the vagina . . . however slight," rather than something more invasive and, naturally, more likely to result in injury. *See* ECF No. 7-92 at 500 (Judge Ashworth's recitation of the elements of the crime).  Indeed, M.R.'s recorded interview included a statement that "Uncle's cookie went *outside* in *the valley* of her cookie." ECF No. 7-94 at 56. Dr. Rotolo conceded that, given M.R.'s age, when she "told the forensic interviewer that Uncle's cookie went into [her] cookie, she may have simply been describing penetration where Uncle's penis went between the outer lip of the labia" and that such contact would be sufficient to qualify as penetration. *Id.* at 57–58. Dr.

14

Rotolo further established that "the most important aspect in evaluating sexual abuse is the child's history [and] the child's statement." *Id.* at 52.

The jury was not tasked with finding anything more substantial, and potentially injurious, than the slightest of penetration. Petitioner did not proffer an expert who could rebut Nurse Stover's position that M.R.'s "normal" examination and lack of physical injury was not inconsistent with her allegations. Accordingly, upon careful review of Dr. Rotolo's testimony before the PCRA Court, there is "no reasonable probability that the additional evidence [Petitioner] presented in his state habeas proceedings would have changed the jury's verdict" based on the trial record as a whole. *Cullen v. Pinholster*, 563 U.S. 170, 200 (2011). Therefore, the state courts reasonably applied the *Strickland* standard[9] and Petitioner has failed to establish that the state courts' judgment was grounded in an unreasonable determination of trial evidence. 466 U.S. at 694.

## V.     CONCLUSION

The Court declines to issue a certificate of appealability. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner has not shown that "reasonable jurists" would find this Court's assessment of the constitutional claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, no certificate of appealability will be issued.

Because the Court finds that Petitioner's rights were not violated and his claims lack merit, the Court denies his Petition and Objections in their entirety and adopts Judge Carlos' reasoned Report and Recommendation. An appropriate order follows.

---

[9] The Superior Court reasoned that Petitioner's argument that Nurse Stover was critical to his conviction "ignores the testimony of the victim, her mother, and others regarding his perpetration of sexual abuse upon M.R." and that Petitioner's "proffered expert could not refute Nurse Stover's ultimate conclusion." ECF No. 7-81 at 12.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**